IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter of<br><br>The Complaint of HEALY TIBBITTS BUILDERS, INC., as owner pro hac vice of WEEKS 544, O.N. 520935, for Exoneration from or Limitation of Liability.<br>_____<br><br>In the Matter of<br><br>The Complaint and Petition of the United States of America in a Cause for Exoneration from or Limitation of Liability with Respect to Navy Barge YCV-23 Re the Incident Involving Mooring Buoy in Pearl Harbor on December 10, 2014. | CIV. NO. 15-00520 JMS/KJM<br>CIV. NO. 16-00156 JMS/KJM<br>(CONSOLIDATED CASES)<br><br>ORDER (1) GRANTING FOURTH-PARTY DEFENDANT PACIFIC SHIPYARDS, INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 355, (2) GRANTING THIRD-PARTY DEFENDANT/FOURTH-PARTY PLAINTIFF OWL INTERNATIONAL, INC'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 359, AND (3) DENYING CLAIMANTS MAKUA, GASPAR, AND ANTONIO'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 368 |

**ORDER (1) GRANTING FOURTH-PARTY DEFENDANT PACIFIC SHIPYARDS, INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 355, (2) GRANTING THIRD-PARTY DEFENDANT/FOURTH-PARTY PLAINTIFF OWL INTERNATIONAL, INC'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 359, AND (3) DENYING CLAIMANTS MAKUA, GASPAR, AND ANTONIO'S MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 368**

## I. **INTRODUCTION**

Before the court are Fourth-Party Defendant Pacific Shipyards International, LLC's ("Pacific Shipyards") Motion for Summary Judgment and Alternative Motion to Sever or Continue Trial, ECF No. 355, Third-Party Defendant/Fourth-Party Plaintiff Owl International, Inc., dba Global Government Services' ("Global") Motion for Summary Judgment, ECF No. 359, and Claimants David B. Makua, III, Cesario T. Gaspar, and Willie C. Antonio's (collectively "Claimants") Motion for Partial Summary Judgment Re: Seaman's Status, ECF No. 368. For the following reasons, Pacific Shipyards' and Global's motions for summary judgment are GRANTED.[1] But because the court finds material issues of fact exist regarding Claimants' seaman status, Claimants' motion for partial summary judgment is DENIED.

## II. **BACKGROUND**

These consolidated limitation proceedings arise from a December 10, 2014, accident that happened during a project to upgrade moorings for inactive Navy vessels in Pearl Harbor. *See* Compl. at ¶¶ 6-7, ECF No. 1 in Civ. No. 15-00520 JMS/KJM. Truston Technologies, Inc. ("Truston") was the contractor for the project. *Id.* at ¶ 6. It hired Healy Tibbitts Builders, Inc. ("Healy Tibbitts") as a

---

[1] Pacific Shipyards' alternative motion to continue trial or sever is thus moot.

subcontractor to provide labor and equipment for a portion of the work. *Id.* The accident occurred when buoy D-8-H, which had been hoisted overhead by a crane barge ("Weeks 544") and suspended above the deck of a Navy barge, slid down the riser or anchor chain onto a sinker block on the deck of the Navy barge, killing two workers and injuring Claimants. *Id.* at ¶ 7. Following the accident, it was determined that bolts inside the buoy had rusted away, causing the flange plate and capture plate on the buoy to fail, which allowed the buoy to fall. *See* First Amended Third-Party Compl. at ¶¶ 23-24, ECF No. 119 in Civ. No. 15-00520 JMS/KJM.

Both barge owners filed complaints for exoneration or limitation of liability. Healy Tibbitts, owner *pro hac vice* of Weeks 544, filed its complaint on December 16, 2015. ECF No. 1 in Civ. No. 15-00520 JMS/KJM. The United States, owner of the Navy barge, filed its complaint on April 4, 2016. ECF No. 1 in Civ. No. 16-00156 JMS/KJM. The cases were consolidated on August 24, 2016.[2] ECF No. 80.

Truston appeared in both matters and asserted that Healy Tibbitts' and/or another party's negligence caused the accident. *See* ECF No. 26 in Civ. No. 15-00520 JMS/KJM and ECF No. 25 in Civ. No. 16-00156 JMS/KJM. It then

---

[2] Unless otherwise noted, all record citations for documents filed on or after consolidation are to Civ. No. 15-00520 JMS/KJM.

filed a third-party complaint against Global, claiming that as the "civilian contractor whose responsibility it was to maintain . . . the subject buoy," Global caused the accident by failing to maintain the buoy, painting over corrosion, and failing to warn Truston about the buoy's condition. ECF No. 119 at ¶¶ 36-38, 45. In their First Amended Verified Claim for Damages, Claimants also allege that Global acted in a negligent and grossly negligent manner by "painting the buoy and otherwise covering the damaged portions of the buoy." ECF No. 348 at ¶¶ 88, 103-04. Global, in turn, filed a fourth-party complaint against Pacific Shipyards, alleging that if anyone was negligent in maintaining the buoy, painting over corrosion, or failing to warn Truston, it was Pacific Shipyards and not Global. ECF No. 243 at 25, 31, 34.

Pacific Shipyards filed its Motion for Summary Judgment on August 16, 2017. ECF No. 355. No party has opposed this motion.

Global filed its Motion for Summary Judgment on August 16, 2017. ECF No. 359. Truston opposed the motion, and Healy Tibbitts joined in that opposition. ECF Nos. 462, 469, 474. Global replied on November 6, 2017. ECF No. 484.

///

///

///

Claimants filed their motion for partial summary judgment on August 18, 2017. ECF No. 368. Healy Tibbitts opposed the motion, ECF No. 459, and Claimants replied, ECF No. 480.[3]

A hearing was held on November 13, 2017, regarding the latter two motions. Pacific Shipyards' motion is decided without hearing pursuant to Local Rule 7.2(d).

### III. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is

---

[3] All parties who did not oppose a particular motion, filed statements of no position as to those motions, except that Truston neither opposed Pacific Shipyards' motion nor filed a position statement regarding it. ECF Nos. 446-450, 452-55, 457-58, 461, 465, 467.

5

material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24. "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (quoting *Celotex*, 477 U.S. at 322). Moreover, there is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party. *Matsushita*, 475 U.S. at 586; *Taylor*, 880 F.2d at 1045.

## IV. **DISCUSSION**

### A. Pacific Shipyards' Motion for Summary Judgment

Pacific Shipyards moves for summary judgment, arguing that there is no evidence it had a duty to maintain the buoy in question, or, even assuming a duty existed, no evidence of breach or causation. Mot. at 6-7, ECF No. 355.

In general, admiralty law recognizes the right to contribution between joint tortfeasors, and liability is apportioned according to fault. *Hunley v. Ace Maritime Corp.*, 927 F.2d 493, 496 (9th Cir. 1991). Hawaii recognizes similar rules. *See* Haw. Rev. Stat. § 663-12. The elements of negligence under admiralty law and Hawaii law are essentially the same: "1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty of care; 3) a causal connection between the offending conduct and the resulting injury, which is called 'proximate cause;' and 4) actual loss, injury or damage suffered by the plaintiff." *Cape Flattery Ltd. v. Titan Mar. LLC*, 607 F. Supp. 2d 1179, 1189 (D. Haw. 2009) (quoting *Pearce v. United States*, 261 F.3d 643, 647-48 (6th Cir. 2001)); *see also Cho v. State*, 115 Haw. 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").

In support of its motion, Pacific Shipyards submits the declaration of its Chief Financial Officer, Ben Nakaoka, who states the following: (1) Pacific Shipyards had "no involvement whatsoever" in the work being done at the time of the accident; (2) although Pacific Shipyards had a contract with the Navy "to maintain the inactive ships at Pearl Harbor during the period of 2002 to 2007," its contract was for "maintenance of the inactive fleet itself not the moorings to which

7

the ships were attached"; and (3) Pacific Shipyards "has no record of ever performing any work on the mooring or the mooring buoy that was allegedly involved in the December 10, 2014 accident." ECF No. 355-2 at ¶¶ 3, 4, 6.

Regarding allegations that it failed to warn Truston of the condition of the buoy, Pacific Shipyards cites the deposition testimony of Richard Vonderhaar, Truston's on-site supervisor, in which he states that, although he did not know the original source of the information, he was aware that the buoy was "old and possibly deteriorated" and that "there was concern of the capture plates being compromised." ECF No. 355-5 at 9:1-11, 10:19-22.

Although Pacific Shipyards' motion for summary judgment is unopposed, it retains its burden to show the absence of any genuine issue of material fact. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 (9th Cir. 1994). "Trial courts resolving unopposed summary judgment motions have an obligation to evaluate independently the sufficiency of the moving papers." *Lopez-Gomez v. Sessions*, 693 F. App'x 729, 731 (9th Cir. 2017). Thus, the court has independently evaluated the motion, and viewing the evidence in the light most favorable to the non-moving parties, the court finds no genuine issue of material fact exists for trial.

Pacific Shipyards' motion for summary judgment is GRANTED.

**B.     Global's Motion for Summary Judgment**

Similarly, Global contends that it is entitled to summary judgment in its favor because, although it conducted surface inspections of the subject buoy, there is no evidence that it was ever hired to or actually performed any painting or maintenance work on the buoy. Mot. at 3, ECF No. 359.

Global submits statements from its project manager and from the retired director of the Navy Inactive Ship Maintenance Office to the effect that the terms of its contract with the Navy required a "task order" or "technical direction letter" before any maintenance could be performed. Steven Copeland Decl. ¶¶ 3-4, ECF 359-2 and Walter Leonard Dep., ECF No. 359-4 at 5-6. And it contends that no such document has been found. Mot. at 9. Further, it submits deposition testimony from the Naval Facilities Engineering Command Fleet Mooring Manager that he never directed Global to paint or refurbish the buoy at D-8-H, where the subject buoy was located just prior to the accident. ECF No. 388-1 at 2.

Regarding Global's inspection of buoys in the harbor, Global admits that it inspected the subject buoy at least twice, but it contends that (1) it could not have seen the deteriorated bolts inside the buoy during these inspections, (2) its inspections were for the purpose of determining the safety of the moored ships, not determining whether the buoy could be safely lifted from the water, and (3) its

9

inspection reports were never given to Truston, so they could not have been relied upon in connection with the lift. Mot. at 3-4.

Thus, Global's motion essentially asserts that there is no evidence that it caused or contributed to the accident because there is no evidence that it (1) painted the buoy at all — let alone painted over corrosion — or (2) could have discovered the corrosion that led to the accident — no matter how thorough its inspection.

In its opposition, Truston points to evidence that "the buoys at use in the Pearl Harbor Middle Loch (including D-8-H) were interchangeable, were interchanged, and were renumbered," so that the subject buoy might not always have been located at the D-8-H mooring. Opp'n, ECF No. 462 at 3-4. It also points to Global's inspection reports noting that the capture plate on the buoy was in "good" condition. Opp'n at 6. And it contends that this evidence creates a question of fact "as to the exact scope and role of Global's maintenance, inspection, refurbishment or repainting of the subject buoy." Opp'n at 7.

Truston also contends that a material question of fact exists as to "the adequacy of Global's inspections and maintenance of the mooring system." *Id*. It cites deposition testimony of experts involved in the OSHA investigation who stated that the mooring system buoys were "suspect" because they showed paint had been applied over corrosion and because they had suffered from an apparent

10

lack of regular maintenance — including maintenance that would have required taking the buoys out of service and taking them apart. *Id*. at 7-10.

Truston further points to the declaration of its forensic engineer, Randy Kent, who opined that the accident was "largely attributable to D-8-H's severely corroded state," which was in turn "largely attributable" to design defects. But Kent also opined that

> [t]hese design defects left D-8-H particularly susceptible to water intrusion and the type of corrosion it experienced, and which, more likely than not, could have been at least detected, if not prevented by more careful maintenance or inspection than that which was performed, as evidenced by the application of paint over areas of severe corrosion.

Kent Decl. at ¶ 6, ECF No. 463-14.

But Truston has not submitted evidence to counter Global's assertion that it was never tasked with painting the buoy or performing any maintenance work on it. Rather, it cites only generally to Global's contract with the Navy and does not refute Global's evidence that painting or other maintenance would have required a specific task order or direction. And it submits no evidence whatsoever for its assertion that "Global could move and maintain the buoys on its own,"

///

///

///

///

presumably meaning without first receiving a task order to do so.  *See* ECF No. 463 at ¶ 29; Opp'n at 9.[4]

Nor does Truston counter Global's evidence that its surface inspections could not have uncovered the corrosion that led to the capture plate failure.  Indeed, Truston cites testimony that "there was no way to see the bolts holding the flange plate and ultimately the attached capture plate were corroded." ECF No. 463. ¶ 12.  When questioned on this point at oral argument, counsel for Truston suggested that the Navy ought to have required a more comprehensive type of inspection, but he cited no evidence that the Navy had ever done so.

"When jurisdiction is maritime, the claims are determined under general principles of maritime negligence rather than common law negligence." *White v. Sabatino*, 526 F. Supp. 2d 1143, 1156-57 (D. Haw. 2007) (internal quotations omitted); *Pope and Talbot Inc. v. Hawn,* 346 U.S. 406, 411 (1953).  But the elements of both are similar: duty, breach of duty, causation, and damages. *Cape Flattery Ltd.*, 607 F. Supp. 2d at 1189.

Here, Truston has shown insufficient evidence of causation to create a question of fact.  Truston has shown no evidence that Global painted over

---

[4] Deposition testimony Truston submits actually suggests otherwise.  Steven Cohen, the Navy fleet mooring program manager, stated that the mooring system was "in need of repair *due to lack of funding to perform the necessary maintenance*" in 2001, when Global's predecessor held a similar contract with the Navy.  ECF No. 463-10 at 4 (emphasis added).

corrosion on the buoy, and even assuming Global's inspections of the buoy were somehow deficient, Truston has shown no evidence that the type of inspections Global was tasked with performing could have revealed the defective or dangerous condition of the buoy.

Global's motion for summary judgment is GRANTED.

## C. Claimants' Motion for Partial Summary Judgment

Claimants seek a determination that they are seamen for purposes of the Jones Act, which provides a claim in negligence for any "seaman" injured in the course of employment. 46 USC § 30104. Although the Jones Act does not define the term "seaman," the Supreme Court has established a "status-based standard" with two essential requirements: (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission;" and (2) the employee must have a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).

Determination of seaman status is a fact-specific inquiry that is usually a question for trial. *Id*. at 371; *see also Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (finding that the issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury"). Summary judgment may be appropriate, however, if

"the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991); *see also Chandris*, 515 U.S. at 371 ("And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.").

The first requirement of the test — that an individual's duties contribute to the function of the vessel — is "very broad" and renders "[a]ll who work at sea in the service of a ship . . . eligible for seaman status." *Chandris*, 515 U.S. at 368 (internal quotation omitted). Healy Tibbitts does not deny that Claimants' work contributed to the function of Weeks 544. And for purposes of this motion, the court assumes that Claimants have met the first prong of the test. Thus, the court turns to the second prong of the test — whether Claimants had a connection to a vessel that was substantial in terms of both its duration and its nature.

"The crux of the second prong of the 'seaman' test involves distinguishing land-based from sea-based employees by examining the employee's activities and duties." *Scheuring v. Traylor Bros., Inc*. 476 F.3d 781, 786 (9th Cir. 2007). It is designed to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose

employment does not regularly expose them to the peril of the sea." *Chandris*, 515 U.S. at 368; *see Cabral v. Healy Tibbits Builders, Inc*., 128 F.3d 1289, 1293 (9th Cir. 1997) ("[T]he purpose of the substantial connection test is to separate land-based workers who do not face the perils of the sea from sea-based workers whose duties necessarily require them to face those risks."). The Supreme Court has recognized "an appropriate rule of thumb for the ordinary case: [a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371.

Claimants contend that they are entitled to seaman's status because they "worked more than 90% of their time as deckhands, aboard [Healy Tibbitts'] barge vessels, tug boats and skiffs." Mot. at 15-16, ECF No. 368. They contend that this work "regularly exposed them to the hazards of maritime employment" and that at the time of the accident they "worked entirely on vessels in navigable waters." Mot. at 4-5. Claimants have submitted affidavits and deposition testimony in support of these contentions, relying principally on their own descriptions of their work history and the tasks they performed. ECF Nos. 368-2 to 368-10.

In opposition, Healy Tibbitts contends that Claimants' descriptions of their jobs as "deck hands" are not determinative. It argues that "duration and

15

nature are not separate analyses" and that although "Claimants may have spent a significant amount of time aboard a barge . . . very little of that time was spent performing sea-based activities." Opp'n at 13, ECF. No. 459. Rather, Healy Tibbitts contends that Claimants were "construction workers whose duties were primarily land-based activities," the nature of which did not change because they were performed on a barge — especially a barge designed "to serve as a construction work platform," and not "exposed to perilous sea conditions." *Id*. at 15, 21.

Healy Tibbitts has submitted the declaration of its president Richard Heltzel ("Heltzel") who makes the following statements:

- Healy Tibbitts is a "general contractor" that "specializes in construction of piers and wharves, dredging, and pile driving."
- Healy Tibbitts "uses construction union workers . . . and does not recognize any formal distinction between workers who work on land-side construction projects and equipment yard maintenance activities and workers who work on the waterfront and marine improvement projects."
- "All [Healy Tibbitts] construction workers can be assigned to work at either a land-side project or a waterfront or marine improvement project."
- "The primary purpose for all of the [Healy Tibbitts] barges is to serve as a construction work platform."
- "Claimants were assigned to projects, not to barges, and they could be reassigned at any time if they are needed on another project."
- Claimants "were regularly assigned to work on [Healy Tibbitts] waterfront and landside construction projects.

16

- When Claimants were assigned barge projects, "a vast majority of the time the barge was in a harbor either berthed at a pier or moored on barge anchors or spuds."
- "Maintenance and repair of the barges generally only occurred between jobs while the barges were tied up to the pier."

Heltzel Decl. at ¶¶ 3-4, 6, 10, 19, 23, 27, ECF No. 460-2. Heltzel further states that Claimants spent a "small amount of time handling lines and securing barges as part of their regular duties," and only rarely would load or unload construction supplies. *Id*. at ¶ 12-13. If those supplies required a crane, "generally . . . the crane barge was secured to a pier." *Id*. at 13. Finally, Heltzel states:

> [o]ver the course of their employment, Claimants spent less than thirty percent of their total work time performing the following activities while aboard vessels at sea: handling vessel lines and securing vessels, loading and unloading equipment and supplies from vessels, serving as a lookout on moving vessels, piloting vessels, refueling vessels, and maintaining and repairing vessels.

*Id*. at 20. Although Hetzel does not address directly all activities that Claimants describe as their job duties, he does state that "Claimants' primary activities included pile driving, dredging, operating heavy machinery, repairing and installing utility lines, welding, repairing [Healy Tibbitts] construction equipment, and constructing piers, wharves and mooring systems." *Id*. at ¶ 9.

Determination of seaman's status requires consideration of whether a worker's "duties were *primarily* sea-based activities." *Cabral*, 128 F.3d at 1293 (emphasis added); *see Papai*, 520 U.S. at 555 ("For the substantial connection

requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."); *Chandris*, 515 U.S. at 370 ("The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected.") (internal quotation marks and citation omitted). Given this conflicting evidence about the nature and focus of Claimants' activities, the court cannot find — as a matter of law — that Claimants' duties were primarily sea-based. That is, based on the evidence submitted, the court simply does not have a clear enough picture of the Claimants' regular duties and whether those duties are sea-based or land-based, to determine Claimants' connection to a vessel or vessels in navigation.

Accordingly, Claimants' motion for partial summary judgement is DENIED.

///

///

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, Pacific Shipyards' and Global's motions for summary judgment are GRANTED, and no counts against these parties remain. Claimants' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 15, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*In the Matters: The Complaint of HEALY TIBBITS BUILDERS, INC., as owner pro hac vice of WEEKS 544, O.N. 520935, for Exoneration from or Limitation of Liability; and The Complaint and Petition of the United States of America in a Cause for Exoneration from or Limitation of Liability with Respect to Navy Barge YCV-23 Re the Incident Involving Mooring Buoy in Pearl Harbor on December 10, 2014*; Civ. Nos 15-00520 JMS/KJM and 16-00156 JMS/KJM (consolidated). Order (1) Granting Fourth-Party Defendant Pacific Shipyards, Inc.'s Motion for Summary Judgment, ECF No. 355. (2) Granting Third-Party Defendant/Fourth Party Plaintiff Owl International, Inc.'s Motion for Summary Judgment, and (3) Denying Claimants Makua, Gaspar, and Antonio's Motion for Partial Summary Judgment, ECF No. 368