IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter of<br><br>The Complaint of HEALY TIBBITTS BUILDERS, INC., as owner pro hac vice of WEEKS 544, O.N. 520935, for Exoneration from or Limitation of Liability,<br>_____<br><br>In the Matter of<br><br>The Complaint and Petition of the United States of America in a Cause for Exoneration from or Limitation of Liability with Respect to Navy Barge YCV-23 Re the Incident Involving Mooring Buoy in Pearl Harbor on December 10, 2014,<br>_____<br><br>AND RELATED CROSSCLAIMS, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS. | Civ. No. 15-00520 JMS-KJM<br>Civ. No. 16-00156 JMS-KJM<br>(Consolidated Cases)<br><br>ORDER DENYING CLAIMANTS' MOTION TO COMPEL PAYMENT OF CURE, ECF NO. 493 |

**ORDER DENYING CLAIMANTS' MOTION TO COMPEL PAYMENT OF CURE, ECF NO. 493**

**I. INTRODUCTION**

Claimants David B. Makua, III, and Cesario T. Gaspar (collectively, "Claimants") seek an order compelling their employer, Limitation Plaintiff Healy Tibbitts Builders, Inc. ("HTBI"), to pay for magnetic resonance imaging scans

("MRIs") that Claimants' treating physicians have recommended. Mot. at 2 and Exs. A, I, ECF Nos. 493, 493-3,493-11. Claimants contend that they are entitled to this treatment, as well as "attorney fees for work done to obtain the care," under the Jones Act, 46 U.S.C. § 30101, *et seq.*, or under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.* Mot. at 2; Claimants' Mem. at 2-3, ECF No. 493-1. "Either way," Claimants contend HTBI is responsible to pay for this treatment as HTBI is "both the Longshore insurance carrier and the putative Jones Act Seaman insurance [c]arrier." Mem. at 2, 4.

HTBI contends that an order compelling "cure"[1] is premature because Claimants' status as seamen is, as yet, unsettled. Opp'n at 4, 12, ECF No. 547. Reluctantly, this court agrees, and DENIES Claimants' Motion at this time.

## II. <u>BACKGROUND</u>

Claimants are HTBI employees who were injured in a December 10, 2014 accident while working on a project to upgrade moorings in Pearl Harbor. They have filed claims in these consolidated Limitation Actions as a result of that accident. ECF Nos. 13, 14. There is no question that Claimants' injuries happened while they were on the job for HTBI. But the court has already determined that

---

[1] "A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship," *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001), where "maintenance" refers to food and lodging, and "cure" refers to medical treatment, *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 413 (2009).

there is a question of fact as to whether, at the time of their injuries, Claimants' job duties were primarily land-based, making them eligible for medical care under the LHWCA, or primarily sea-based (i.e. regularly exposing them to the perils of the sea ), making them seamen entitled to cure under the Jones Act. *See* Order Denying Claimant's Mot. Partial Summ. J., ECF No. 489 at 14-18. Under either system, HTBI is responsible for providing reasonable and necessary medical treatment for Claimants' injuries; the threshold question presented by this Motion is under which system Claimants may proceed.

Claimants' Counsel states that it is his "policy . . . where there is a question of whether or not [injured workers] are covered under the Jones [A]ct to file Longshore claims because it's usually easier to get them the medical care that they need and there's a quick process called an Informal Conference which facilitates the obtaining of medical care." Mem. at 4. He did so for these Claimants, and he attaches memoranda from such informal conferences recommending authorization and payment for the MRIs. *See* U.S. Dep't of Labor Mems. at 3, ECF Nos. 493-9, 493-16. Apparently, HTBI or its carrier declined to accept these recommendations and sent letters denying coverage for the MRIs on November 7, 2017. ECF Nos. 493-10, 493-17.[2]

---

[2] HTBI denied the MRI for Mr. Makua because he had had an MRI "seven months post-accident" and "[t]here has been no interim injury nor a documented change in Claimant's

(Continued . . .)

According to HTBI, Claimants' counsel has not pursued formal proceedings under the LHWCA through the Office of Workers' Compensation Programs. Opp'n at 12. Claimants filed this Motion on December 11, 2017. ECF No. 493. HTBI filed its Opposition on January 30, 2018, ECF No. 547, and Claimants replied on February 6, 2018, ECF No. 562. No other party has taken a position on these issues. *See* Statements of No Position, ECF Nos. 543, 545, 546. A hearing was held on February 20, 2018.

### III. <u>DISCUSSION</u>

The parties disagree about the appropriate legal standard for this Motion. HTBI contends that the court should apply a summary judgment standard, Opp'n. at 5, and characterizes Claimants' Motion as a "thinly veiled motion for reconsideration on the issue of seaman status," *id*. at 11. Claimants contend that a more lenient standard applies, Claimants' Mem. at 7, based on the Supreme Court's recognition of "the breadth and inclusiveness of the shipowner's duty" to provide maintenance and cure to injured seamen. *Vella v. Ford Motor Co.*, 421 U.S. 1, 4 (1975).

---

(. . . continued)
condition" or "explanation for why a repeat MRI is warranted, reasonable, or necessary." ECF No. 493-8. Regarding Mr. Gaspar's requested MRI, HTBI's independent medical examiner opined that "no further or additional . . . treatment or testing is needed at this time." ECF Nos. 493-14, 493-16.

"Admiralty courts have been liberal in interpreting this duty 'for the benefit and protection of seamen who are its wards.'" *Vaughan v. Atkinson*, 369 U.S. 527, 531-32 (1962) (quoting *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 529 (1938)). "[T]he shipowner's liability for maintenance and cure [is] among 'the most pervasive' of all" duties and is "not to be defeated by restrictive distinctions nor 'narrowly confined.' When there are ambiguities or doubts, they are [to be] resolved in favor of the seaman." *Id*. at 532 (quoting *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730, 735 (1943)). "It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Farrell v. United States*, 336 U.S. 511, 516 (1949).

District courts have recognized that application of the summary judgment standard, which requires the court to draw all inferences in the light most favorable to the nonmoving party, "squares awkwardly with the Supreme Court's instructions to defer to seamen in determining maintenance and cure questions." *Connors v. Iqueque U.S.L.L.C.*, 2005 WL 2206922, at *1 (W.D. Wash. Aug. 25, 2005); *see Buenbrazo v. Ocean Alaska, LLC*, 2007 WL 7724765, at *3 (W.D. Wash. Feb. 28, 2007 ("An obvious tension exists between the summary judgment standard, which requires that all doubts be resolved in favor of the non-moving

party, and the canon of admiralty law, which provides that all doubts be resolved in favor of the seaman."); *Robb v. Jantran, Inc.*, 2016 WL 2986233, at *2 (N.D. Miss. May 6, 2016) (observing that "courts throughout the country have struggled to reconcile *Vaughan*'s dictate" to resolve ambiguities in favor of seamen with the summary judgment procedure); *Best v. Pasha Haw. Transp. Lines, L.L.C.*, 2008 WL 1968334, at *1 (D. Haw. May 6, 2008) (collecting cases). Appellate courts have not yet addressed this issue, although the Ninth Circuit has upheld a denial of maintenance as "premature" when questions of fact existed as to a seaman's entitlement thereto. *Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1505-06 (9th Cir. 1995), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

This has led some courts to "take a 'flexible' approach" in dealing with a seaman's motion to compel maintenance and cure. *Connors*, 2005 WL 2206922, at *2 (quoting *Putnam v. Lower*, 236 F.2d 561, 568 (9th Cir. 1956) (noting that "admiralty courts are flexible in operation," and may exercise limited equitable powers)); *see also Boyden v. Am. Seafoods Co.*, 2000 WL 33179294, at *2 (W.D. Wash. Mar. 21, 2000) (finding that "[a]pplying a summary judgment standard to the payment of maintenance and cure would invite litigation and cause delays by involving the court in the medical determinations" and "thus undermining the policy of simplicity in these matters").

6

For example, in *Connors*, the plaintiff, an injured maritime engineer, moved to compel payments for maintenance and cure when the ship's owner terminated such payments approximately eight months after the plaintiff's injury. 2005 WL 2206922, at *1. The parties disputed whether the plaintiff had been injured in the service of the ship, whether he had reached "maximum cure," and whether, at the time he was hired, he had intentionally concealed his susceptibility to the particular injury.[3] *Id.* at *2. Persuaded by the Supreme Court's "instructions to construe claims for maintenance and cure liberally in favor of seamen," the court ordered the defendant to continue maintenance payments for another approximately nine months, during which time it was permitted to conduct discovery to bolster its defense. *Id.* at *2, 3. The court denied additional cure payments for lack of evidence linking medical bills to treatment designed to help achieve maximum cure, but it allowed plaintiff to file a second motion, and a later motion to extend payments beyond the initially ordered period, if necessary. *Id.* at *3.

But before a court considers this flexible approach, a foundational question must be addressed — is the plaintiff a seaman? That is, a claim for

---

[3] "[I]njury incurred otherwise than in the service of the ship" and "sickness or infirmity intentionally concealed when the engagement is entered into" are exceptions to injuries for which seaman are entitled to payment of maintenance and cure. *Warren v. United States*, 340 U.S. 523, 525 (1951).

7

maintenance and cure requires that the individual qualify as a "seaman" under the Jones Act. *See Scheuring v. Traylor Bros. Inc.*, 476 F.3d 781, 784 n.3 (9th Cir. 2007); *see also Figueroa v. Campbell Indus.*, 45 F.3d 311, 313 (9th Cir. 1995) ("The Jones Act and the LHWCA both provide a remedy to injured maritime workers. However, each statute specifies different maritime workers to be within its reach."). "In other words, if the Jones Act claim fails, so too do the . . . maintenance, cure and related payments claims." *Scheuring*, 476 F.3d at 784 n.3. Claimants have not cited, nor has this court found, any case in which maintenance or cure was compelled before a claimant's seaman status was established. Indeed, the Fifth Circuit has found that uncertainty as to a claimant's status is a reasonable defense to failure to pay maintenance and cure, such that denial of an award of penalties and attorney's fees for failure to pay is warranted. *Legros v. Panther Servs. Group, Inc.,* 863 F.2d 345, 352 (5th Cir. 1988); *see also Verdin v. Plaisance Dragline & Dredging Co.*, 1995 WL 377077, at *4 (E.D. La. June 22, 1995) (dismissing claims for compensatory and punitive damages for failure to pay maintenance and cure, finding "defendant's denial of maintenance and cure benefits pending a determination of whether plaintiff is a seaman is reasonable as a matter of law.")

And numerous courts have applied a summary judgment standard to determine seaman status before considering maintenance and cure. *See, e.g.*

*Buenbrazo*, 2007 WL 7724765, at *4 (applying summary judgment standard and denying motion to compel maintenance and cure when factual questions existed as to whether injury happened while Claimant was a seaman or a land-based employee). The court in *Buenbrazo* was "cognizant of the weighty policies in favor of a seaman's right to maintenance and cure," but was "skeptical that the Supreme Court's admonition [in *Vaughan*] was designed to torpedo the well-established summary judgment procedure." *Id.*; *see also Mabry v. Wizard Fisheries, Inc.*, 2007 WL 1556529, at *3 (W.D. Wash. May 24, 2007) (denying motion to compel cure where threshold factual issues existed, including whether claimant's injury was caused while he was in service of a vessel); *Davis v. Icicle Seafoods, Inc.*, 2008 WL 4189378, at *3 (W.D. Wash. Sept. 5, 2008) (same); *Ward v. EHW Constructors*, 2016 WL 7407226, at *4 (W.D. Wash. Dec. 22, 2016 (same). This court agrees. Unless and until Claimants are found to be seamen, they are simply not entitled to the remedy of maintenance and cure.[4]

///

///

///

---

[4] To the extend Claimants ask this court to order payment for the MRIs under the LHWCA, this court has no jurisdiction to do so. As HTBI has argued, and Claimants' do not deny, a worker seeking compensation under the LHWCA must proceed through the administrative procedure outlined in 33 U.S.C. § 919.

9

## IV. CONCLUSION

Because the court has previously determined that a question of fact exists as to Claimants' status as seaman (and no new evidence has been presented on that question), Claimants' Motion to Compel Payment of Cure is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 20, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*In the Matters of: The Complaint of HEALY TIBBITS BUILDERS, INC., as owner pro hac vice of WEEKS 544, O.N. 520935, for Exoneration from or Limitation of Liability; and The Complaint and Petition of the United States of America in a Cause for Exoneration from or Limitation of Liability with Respect to Navy Barge YCV-23 Re the Incident Involving Mooring Buoy in Pearl Harbor on December 10, 2014*; *and Related Crossclaims, Counterclaims and Third-Party claims*; Civ. Nos. 15-00520 JMS-KJM and 16-00156 JMS-KJM (consolidated), Order Denying Claimants' Motion to Compel Payment of Cure, ECF No. 493.